**Oded BEN–JOSEPH, Plaintiff,**

**v.**

**MT. AIRY AUTO TRANSPORTERS, LLC, et al., Defendants.**

**Civil No. JFM 07–1922.**

United States District Court,
D. Maryland.

Jan. 4, 2008.

Gregory Gene Hopper, Salsbury Clements Bekman Marder and Adkins LLC, Baltimore, MD, Katherine Ann Watras, Michael Gary Paris, Nystrom Beckman and Paris LLP, Boston, MA, for Plaintiff.

Thomas Patrick Ryan, McCarthy Wilson LLP, Baltimore, MD, Howard Meinster, Michael J. Budow, Budow and Noble PC, Bethesda, MD, for Defendants.

## OPINION

J. FREDERICK MOTZ, District Judge.

Plaintiff Oded Ben–Joseph has brought suit against defendants Mt. Airy Auto Transporters, LLC ("Mt. Airy"), Brian Rogers, and Superior Auto Service, Inc. ("Superior") jointly and severally for injuries he sustained as a result of an automobile accident involving a Lincoln Town Car and a tractor-trailer truck (the "truck") owned by Mt. Airy. (Compl.¶¶ 1–15.) Plaintiff alleges that Mt. Airy's truck struck the Lincoln Town Car, in which plaintiff was a passenger, after negligently running a red light after the truck's brakes failed. (*Id.* ¶ 12.) Defendants' negligent inspection and maintenance allegedly caused the brake failure. (*Id.* ¶¶ 13–14.) Plaintiff seeks both compensatory damages in excess of $75,000 and punitive damages. (*Id.* ¶¶ 20, 26, 33.) Defendants have moved to dismiss plaintiff's claim for punitive damages, and plaintiff's oppositions and defendants' replies have followed. For the reasons detailed below, I deny defendants' motions to dismiss.

### I.

The facts, as alleged in plaintiff's complaint, are as follows. Plaintiff was severely injured on December 8, 2005, when Mt. Airy's truck ran a red light at the intersection of Route One and Ridge Road in South Brunswick, New Jersey, and slammed into the side of the Lincoln Town Car in which plaintiff was riding. (*Id.* ¶ 1.) Traveling eastbound on Ridge Road, the Lincoln Town Car lawfully entered the intersection with a green turn arrow and began to make a left turn when it was struck by the truck driving southbound on Route One. (*Id.* ¶¶ 9–12.) Defendant Rogers, acting as an agent and/or employee of Mt. Airy, was the driver of the truck, and defendant Superior had worked on the truck's brakes shortly before the collision. (*Id.* ¶¶ 1, 5.) After the accident, the New Jersey State Police Commercial Vehicles Inspection Unit inspected the truck and determined that its brakes had failed. (*Id.* ¶ 13.) In addition, the New Jersey State Police Traffic–Truck Enforcement Division cited the truck for violating several provisions of the Federal Motor Carrier Regulations ("FMCR").[1] (*Id.* ¶ 14.) As a direct and proximate result of the accident, plaintiff suffered severe physical, emotional, and economic injury. (*Id.* ¶ 15.)

Plaintiff alleges three counts of negligence against defendants: (1) that Rogers and Mt. Airy negligently failed to properly operate Mt. Airy's truck, and to inspect and maintain the condition of the truck's brakes, (*Id.* ¶¶ 16–18); (2) that Mt. Airy negligently failed to develop and implement adequate safety programs to prevent the accident, to properly supervise its agents and employees, and to maintain and repair its truck's brakes, (*Id.* ¶¶ 21–24; and (3) that Superior negligently performed maintenance and repairs on the mechanical and brake systems of the truck, and knew or should have known that the brakes and other equipment on the truck were defective. (*Id.* ¶¶ 27–31.) Plaintiff alleges further that the harms

---

1. The violations included FMCR 49 § 393.43, for having an inoperable parking brake and for having "cable not connected to the truck/4th axle on the right side brake inopera[ble] for breakaway"; FMCR 49 § 48(a), for having inoperable brakes; and FMCR 49 § 396.-A(1)(B)(A), for having brakes which were not in proper operating order.

caused by the three defendants "were actuated by actual malice and accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions, deliberately and/or with knowledge of a high degree of probability of harm to another and with reckless indifference to the consequences of the acts or omissions." (*Id.* ¶¶ 20, 26, 33.)

## II.

In *Bell Atl. Corp. v. Twombly*, —— U.S. ——, ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Supreme Court held that, in order to survive a motion to dismiss, a plaintiff must plead plausible, not merely conceivable, facts in support of her claim.[2] The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. In considering a motion to dismiss, a court must "accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir.2001). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

There are two issues raised by defendants' motions to dismiss plaintiff's punitive damages claim. The first is a choice of law question: whether Maryland or New Jersey substantive law applies in the instant case. Because Maryland's and New Jersey's standard for punitive damages differs, only after determining which law to apply can I determine the second issue: whether plaintiff can prove a plausible set of facts in support of his punitive damages claim which would entitle him to relief.

### A.

In an action based upon diversity of citizenship, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The district court must apply the law of the forum state, including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Maryland adheres to the *lex doci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in tort. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 648–49 (2007); *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 911 A.2d 841, 844 (2006); *Philip Morris v. Angeletti*, 358 Md. 689, 752 A.2d 200, 230 (2000). Under *lex loci delicti*, the law of the state where the tort or wrong was committed applies. *Hood*, 911 A.2d at 844. Where the events giving rise to a tort action occur in more than one state, the court must apply "the law of the State where the injury—the last event required to constitute the tort—occurred." *Heffernan*, 925 A.2d at 649; *Hood*, 911 A.2d at 845. Similarly, Section 377 of the First Restatement of Conflict of Laws states that "[t]he place of the wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."[3] Restatement (First) of Conflict of Laws § 377 (1934).

---

**2.** Prior to *Twombly, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), set the standard, granting 12(b)(6) dismissals for failure to state a claim only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

**3.** Note 1 to § 377 explains further: "Except in the case of harm from poison, when a person sustains bodily harm the place of wrong is the place where the harmful force takes effect upon the body." Restatement (First) of Conflict of Laws § 377, Note 1 at 455–56 (1934). "Because Maryland is among

■ Defendant Superior argues that because its alleged negligence in contracting for and performing repairs and maintenance on the truck took place in Maryland, " 'the last event necessary to make an actor liable for an alleged tort' must have occurred in Maryland, and as such Maryland's substantive law governs any claims arising from that work." [4] (Superior's Reply at 2 (internal citations omitted).) Superior's argument is unpersuasive, however. In the instant case, plaintiff's cause of action against Superior for negligent repair and maintenance would not exist but for Mt. Airy's truck colliding with the Lincoln Town Car in which plaintiff was a passenger. That Superior's allegedly negligent conduct occurred in Maryland does not change this fact. The Court of Appeals of Maryland has stated explicitly that "when the events giving rise to a suit occur in a number of states[,] [a]s a general rule, the place of the tort is considered to be the place of the injury." *Angeletti*, 752 A.2d at 231; *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (explaining that under Maryland conflict of law jurisprudence, "[t]he place

of injury is the place where the injury was suffered, not where the wrongful act took place").[5]

Recent decisions by the Court of Appeals of Maryland provide further support for applying the law of the place of injury, not the place of negligent conduct. In *Hood*, parents brought a negligence action against a testing laboratory, alleging that the laboratory's erroneous report stating that their fetus did not carry the cystic fibrosis genetic mutation resulted in the "wrongful birth" of their child. *Hood*, 911 A.2d at 842. At issue was whether to apply the substantive law of Maryland, where the injury (the birth) occurred, or of North Carolina, where defendant's negligent acts or omissions took place. *Id.* at 843. In answering questions certified to it by the United States District Court for the District of Maryland, the Court of Appeals of Maryland agreed with the District Court that "the place where the last event required to give rise to the tort occurred determines the law that should apply, that in personal injury claims the last event required to give rise to the tort is the injury, and that the injury in this action occurred in Maryland, where [the child] was born." [6] *Id.* at 844, 847; *see also*

the few states that continue to adhere to the traditional conflict of laws principle of *lex loci delicti*, the First Restatement of Conflict of Laws, while of merely historical interest elsewhere, continues to provide guidance for the determination of *lexi loci delicti* questions in Maryland." *Hood*, 911 A.2d at 845; *Angeletti*, 752 A.2d at 231 n. 25.

4. In its reply memorandum, defendant Mt. Airy appears not to contest that New Jersey law governs because it addresses only issues arising under New Jersey law. (*See* Mt. Airy's Reply at 1.) Defendant Rogers has not filed a reply, and thus has not addressed the conflicts question. Because Rogers's alleged negligence occurred in his operating of the truck in New Jersey, the issue of his liability is clearly determined by New Jersey law under Maryland's *lex loci delicti* rule. Similarly, because Mt. Airy owned the truck, and was allegedly negligent for not properly maintaining its equipment and supervising its agents

(and allegedly also vicariously liable for Rogers's negligence), the issue of its liability is also clearly determined by New Jersey law.

5. Robert A. Leflar, American Conflicts Law § 133, at 267 (3rd ed.1977) similarly states: "Some acts ... produce impacts across state lines. The orthodox rule, with torts as with crimes, is that when an act operates across a state line its legal character is determined by the law of the place where it first takes harmful effect or produces the result complained of." (footnotes omitted).

6. There is nothing in the current record that supports the application of either of two limited exceptions to this traditional rule: (1) Section 380(2) of the First Restatement of Conflict of Laws, or (2) a public policy exception, which were both recognized as valid exceptions in Maryland in *Hood*, 911 A.2d at 844–51.

*Heffernan,* 925 A.2d at 649 (applying tort principles to a breach of contract, the court held: "... because the automobile collision occurred in Delaware, under Maryland law, a Maryland Court would apply the substantive law of Delaware [rather than Maryland, where the insurance contract was executed] to determine what the claimants are 'entitled to recover' in an action for uninsured motorist benefits").

For the foregoing reasons, and because Maryland courts have held punitive damages to be of a substantive nature, *Naughton v. Bankier,* 114 Md.App. 641, 691 A.2d 712, 716 (1997), I will apply New Jersey substantive law to determine whether plaintiff has stated a sufficient claim for punitive damages against the three defendants in the instant case.

### B.

■ New Jersey's Punitive Damages Act of 1995 (the "Act") provides that punitive damages may be awarded "only if the plaintiff proves by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were [1] actuated by actual malice or [2] accompanied by wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." [7] N.J.S.A. 2A:15–5.12(a). Furthermore, the plaintiff may not satisfy this burden of proof "by proof of any degree of negligence including gross negligence." *Id.*

The Act in most respects codified the common law in New Jersey. *Pavlova v. Mint Mgmt. Corp.,* 375 N.J.Super. 397, 868 A.2d 322, 326 (App.Div.2005). New Jersey law limits punitive damages to only "exceptional cases ... as a punishment of the defendant and as a deterrent to others from following his example." *Di Giovanni v. Pessel,* 55 N.J. 188, 260 A.2d 510, 511 (1970). To warrant the imposition of punitive damages "the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another ..." *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 477 A.2d 1224, 1230 (1984). Circumstances of "aggravation and outrage," beyond the simple commission of a tort, are required to award punitive damages. *Pavlova,* 868 A.2d at 326; *Dong v. Alape,* 361 N.J.Super. 106, 824 A.2d 251, 257 (App.Div.2003). Thus, mere negligence, however gross, is not enough. *Id.* A plaintiff must demonstrate a "deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." *Berg v. Reaction Motors Div.,* 37 N.J. 396, 181 A.2d 487, 496 (1962). This standard can only be established "if the defendant knew or had reason to know of circumstances which would bring home to the ordinary reasonable person the highly dangerous character of his or her conduct." [8] *Pavlova,* 868 A.2d at 326.

Defendant Mt. Airy argues that plaintiff fails to meet New Jersey's standard because "Plaintiff sets forth no facts in his Complaint to support the necessary contention that Defendant's conduct was intentional or deliberate." (Mt. Airy's Reply

---

7. "Actual malice" is "an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15–5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.*

8. In contrast, under Maryland law, a plaintiff may only be awarded punitive damages if he proves "actual malice," defined as "conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Bowden v. Caldor, Inc.,* 350 Md. 4, 710 A.2d 267, 276 (1998).

at 4.) Defendant Superior similarly asserts that plaintiff's allegations that Superior's alleged negligence was malicious or wanton are "broad and conclusory statements ... wholly unsupported and ... inapposite to the facts set forth in Plaintiff's Complaint." (Superior's Reply at 5.) In support of their argument, defendants devote a significant portion of their replies to distinguishing the facts of the instant case from *Smith v. Whitaker,* 160 N.J. 221, 734 A.2d 243 (1999), in which the court upheld punitive damages where an oil truck killed a motorist when it was unable to stop due to maladjusted rear brakes. (*See* Mt. Airy's Reply at 2–4, 7–8; Superior's Reply at 6–8.)

Defendant Mt. Airy contends that while the driver in *Smith* "was inexperienced, knew nothing about adjusting brakes, and had never been trained on how to perform a pre-trip inspection," Mt. Airy "employed a driver, Brian [Rogers], who possessed a valid Commercial Drivers' License, had many years' experience operating commercial vehicles, and had been trained and routinely performed pre-and post-trip inspections on the truck." (Mt. Airy's Reply at 3.) In addition, Mt. Airy submits that it "had it its truck fully inspected and serviced, including its brakes ... a mere thirty-eight (38) days before the accident occurred." (*Id.*) Superior similarly asserts that while the defendants in *Smith* were aware of the defects in the truck's braking system *prior* to the accident, the evidence in the instant case has shown only that the defects in Mt. Airy's truck's brakes were discovered *after* the accident. (Superior's Reply at 6–7.)

These arguments are inappropriate on a motion to dismiss, however. Mt. Airy relies upon evidence not in the complaint, while Superior draws evidentiary conclusions prior to any discovery. At the motion to dismiss stage, the issue is not whether plaintiff's evidence is sufficient to warrant the imposition of punitive damages, but whether plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 127 S.Ct. at 1974.

Superior and Mt. Airy further argue that "[n]owhere in the Complaint" does plaintiff allege any facts that defendants were aware of any alleged problems or defects with the truck's braking system prior to the accident at issue. (Superior's Reply at 6; Mt. Airy's Reply at 4.) Mt. Airy additionally argues that plaintiff's complaint fails to allege sufficient facts to satisfy the four factors that must be considered under New Jersey law in determining whether punitive damages are to be awarded.[9] (Mt. Airy's Reply at 6–7.)

These arguments, although appropriate at the motion to dismiss ·stage, are unpersuasive. I conclude that Ben–Joseph has pled enough facts to state a claim to relief that is plausible on its face. Plaintiff has alleged that the truck's brakes were inoperable at the time of accident, violating the Federal Motor Carrier Regulations, and that Rogers, Mt. Airy, and Superior knew or should have known of this fact. (Compl.¶¶ 13–14, 23, 30.) In support of this allegation, plaintiff has alleged that Rogers failed to inspect and monitor the condition of the brakes before driving the truck, (Compl.¶ 18); that Mt. Airy "negligently [and] recklessly ... failed to take proper steps to adequately maintain the

---

9. These four factors are: "(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) The duration of the conduct or any concealment of it by the defendant." N.J.S.A. 2A:15–5.12(b).

brakes," (Compl.¶ 18); and that Superior, which had performed repairs on the truck's brakes on October 31, 2005 (approximately five weeks before the accident), acted "with complete disregard for the safety of others." (Compl.¶ 29–30.) As to the alleged negligence of the three defendants in not adequately inspecting, maintaining, and servicing the truck's brakes, plaintiff has alleged that they acted: "with actual malice"; "[with] a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions"; "deliberately and/or with knowledge of a high degree of probability of harm to another"; and "with reckless indifference to the consequences of the acts of omissions." [10] (Compl.¶¶ 20, 26, 33.)

A court may dismiss a complaint "only if it is clear that no relief could be granted under any [plausible] set of facts that could be proved consistent with the allegations." *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992. It is unclear at this time whether sufficient evidence will be produced during discovery to prove that defendants were aware of the defective breaks and wantonly disregarded the high degree of probable harm that this danger posed to others.[11] However, for purposes of a motion to dismiss—viewing the complaint in the light most favorable to the plaintiff—I conclude that, just as in *Smith,* it is plausible that defendants acted with "wanton or willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15–5.12(a).

Accordingly, I deny defendants' motions to dismiss plaintiff's punitive damages claim. A separate order to that effect is being entered herewith.

## ORDER

For the reasons stated in the attached Opinion, it is, this 4th day of January 2008

### ORDERED

1. The motion to dismiss plaintiff's claim for punitive damages (document # 11) filed by Superior Auto Service, Inc. is denied;

2. The motion to dismiss plaintiff's claim for punitive damages (document # 19) filed by Mt. Airy Auto Transporters is denied; and

---

**10.** In an essentially identical set of allegations, the plaintiff in *Smith* alleged that "defendants ... either knew or should have known that the braking systems and braking mechanisms on the vehicle being operated by ... [the defendant driver] ... were faulty, defective and not in proper working order, but ... defendants negligently, recklessly and with callous disregard for the safety of others, failed to take such proper steps as were necessary to adequately service, maintain and ensure that the braking mechanisms on said vehicle were in proper working order." *Smith,* 313 N.J.Super. 165, 713 A.2d 20, 22 (App.Div.1998). Smith also alleged that the "carelessness and recklessness" of defendants was "willful, wanton, and with knowledge of a high degree of probable harm to others such that the deliberate and wanton failure of the defendants ... should be assessed with punitive and exemplary damages." *Id.* at 22–23.

**11.** It is worthy of note that defendants have not produced a single case in New Jersey, or in any other state with a similar punitive damages standard, in which a court has dismissed a plaintiff's punitive damages claim on a motion to dismiss. In two of the more recent New Jersey cases in which an appellate court held that plaintiff was not entitled to punitive damages—*Parks v. Pep Boys,* 282 N.J.Super. 1, 659 A.2d 471, 478–79 (App.Div. 1995) (where the store sold Freon to a fourteen-year old boy, who used the Freon with friends as a drug), and *Allendorf v. Kaiserman Enters.,* 266 N.J.Super. 662, 630 A.2d 402, 409 (App.Div.1993) (where the plaintiff was injured when an elevator door malfunctioned)—the trial court had decided the matter on summary judgment after compiling an evidentiary record, not on a motion to dismiss.

3. The motion to dismiss plaintiff's claim for punitive damages (document # 29) filed by Brian Rogers is denied.